UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:14-80361-CIV-COHN/SELTZER

| | |
|---|---|
| KARLYLE ALVINO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EQUINOX HOLDINGS INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT AND SUPPORTING MEMORANDUM OF LAW**

Defendant, EQUINOX HOLDINGS, INC. ("Equinox" or "Defendant"), seeks summary judgment seeking to dismiss Plaintiff's three-count Amended Complaint [D.E. 17] alleging sexual harassment (Count I) and retaliation (Count II) under the Florida Civil Rights Act, Fla. Stat. § 760 et seq. ("FCRA"), and unpaid wages for "off-the-clock" time under the Fair Labor Standards Act, 29 U.S.C. §§ 201 ("FLSA") (Count III).

**PRELIMINARY STATEMENT**[1]

Plaintiff, a former personal trainer at Equinox South Beach (the "Club"), claims that she was sexually harassed because a co-worker made a pass at her while off-site in his car, and because several of the Club's members asked her on dates and told her she was attractive. Ignoring her complete failure to meet the Company-wide production requirements of personal trainers and the fact she violated her noncompete agreement twice during her employment, Plaintiff claims that she was terminated in retaliation for complaining about her co-worker.

---

[1] Defendant's memorandum is supported by a Statement of Undisputed Facts filed simultaneously herein.

Summary judgment is appropriate on Plaintiff's sexual harassment claims because the alleged acts are neither severe nor pervasive.  Moreover, Equinox cannot be held liable for the alleged actions of a co-worker and its members.  Plaintiff's allegations are not even of a sexual nature -- being asked out to dinner and being told one is attractive (by nonemployees) is not sexual harassment under the extremely high bar set by the Eleventh Circuit. To the extent the rejected pass by a co-worker is found to rise to the level of a hostile work environment, liability cannot be imputed to Equinox because it has a comprehensive anti-harassment policy, which Plaintiff admittedly read and understood, and Equinox terminated the co-worker after Plaintiff complained.  Nor can liability be ascribed to Equinox for the alleged acts of the Club's members because Plaintiff never utilized the sexual harassment policy and issued a complaint.

Plaintiff's retaliation claim is equally flawed.  Plaintiff's services as a personal trainer were terminated several months after she complained about her co-worker because she came nowhere near the minimum stated production requirements.   Moreover, although her employment with Equinox could have been completely severed at that time, Plaintiff was allowed to remain employed as a group fitness instructor (which had no production requirements).  It was only after Plaintiff violated her noncompete agreement a second time that her employment was finally terminated.  Plaintiff fails to demonstrate a prima facie case of retaliation because she has proffered no evidence whatsoever demonstrating a causal connection between these acts and her complaint about a co-worker several months earlier.  In any event, she cannot demonstrate that "but for" the complaint about a co-worker, her employment would not have been terminated.

With regard to the "off-the-clock" claim under the FLSA, Plaintiff essentially claims that she was "always" at the Club because she hung around between the personal training

appointments she set, her scheduled Floor Shifts, and the group fitness classes she taught twice a week.  Defendant contends that summary judgment is appropriate because: (1) the method by which Plaintiff was paid was meant to and did compensate her for all time preparing for her training sessions and group fitness classes (e.g., $26.50 per hour and $50.00 per hour, respectively); 2) Plaintiff fails to demonstrate she worked and was not compensated for such time; and 3) her supervisors were unaware Plaintiff was performing work in between her scheduled shifts, classes, and training appointments.  As such, summary judgment should be granted dismissing the Amended Complaint in its entirety.

**POINT I**

**PLAINTIFF FAILS TO PROVE A PRIMA FACIE CASE OF
A SEXUALLY HOSTILE WORK ENVIRONMENT**

**A.**    **Burden of Proof**

The legal standard for a sexually hostile work environment claim in this Circuit is well-settled.  To prove a hostile work environment, Plaintiff must demonstrate: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable. Mendoza v. Borden, Inc., 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc) (citation omitted).[2] Plaintiff's sexual harassment claim involves two distinct allegations: 1) that she was sexually

---

[2]   As the FCRA essentially mirrors Title VII of the Civil Rights Act of 1964, courts follow federal case law applying the burdens of proof under Title VII.  McKenzie v. EAP Mgmt. Corp., 40 F. Supp. 2d 1369 (S.D. Fla. 1999).

harassed by several Club members; and 2) that she was sexually assaulted by a co-worker, Ari Weinstein.

### 1.  The Alleged Harassment Was Neither Severe Nor Pervasive

"The Eleventh Circuit [] has delineated a minimum level of severity necessary for harassing conduct to constitute discrimination, and the bar is quite high." Maganiello v. The Town of Jupiter Inlet Colony, No. 12-80722-Civ-Marra, 2013 U.S. Dist. LEXIS 175938, *19 (S.D. Fla. Dec. 15, 2013) (granting summary judgment). The Court must consider: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interfered with her job performance. Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999); Bussell v. Motorola, Inc., 141 F. App'x 819, 823 (11th Cir. 2005) (affirming dismissal of hostile work environment claim)

In the Eleventh Circuit's seminal Mendoza decision, the Court of Appeals conducted a review of relevant decisions in rendering its holding and emphasized that trial courts must serve as the gatekeepers in harassment cases by dismissing claims that fail to meet the "severe or pervasive" standard as defined by the courts. 195 F.3d at 1246-47. The Eleventh Circuit found that the plaintiff had failed to establish a hostile work environment despite her claims that her boss constantly followed and stared at her in the workplace, rubbed his hip against hers while touching her shoulder and smiling, and made sniffing noises while staring at her groin area. In finding that the plaintiff's allegations did not support a sexual harassment claim, the court held that, short of characterizing such conduct as "stalking" or "leering" or "intimidating" or "threatening," an employee must be expected to tolerate those types of unavoidable occurrences when people work together. Id. at 1249.

Given the context of Plaintiff's claims, Defendant contends that the United States Supreme Court's decision in <u>Oncale v. Sundowner Offshore Servs., Inc.</u>, is instructive:

> We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." . . . **[T]hat inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target.** A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. **The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed.** Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.

523 U.S. 75, 81-82 (1998) (citations omitted) (emphasis added).

**2.      <u>There Are No Grounds for Holding Equinox Liable</u>**

Even if a plaintiff creates a question of fact as to whether a hostile environment existed, the court must review whether there is a basis for imputing an individual's conduct to the employer.  When the alleged harassment is committed by co-workers or customers, the plaintiff "must show that the employer either knew (actual notice) or should have known (constructive notice) of the harassment and failed to take immediate and appropriate corrective action."  <u>Hill v. Wal-Mart Stores, Inc.</u>, 510 F. App'x 810, 814-15 (11th Cir. 2013) (affirming summary judgment), <u>cert. denied</u>, 134 S. Ct. 618 (2013) (quoting <u>Watson v. Blue Circle, Inc.</u>, 324 F.3d 1252, 1259 (11th Cir. 2003)).  An employer is responsible for acts of sexual harassment in the workplace where the employer "knows or should have known of the conduct, unless it can show

that it took immediate and appropriate correct action."  29 C.F.R. 1604.11(d); Coates v. Sundor

Brands, Inc., 164 F.3d 1361, 1369 n.6 (11th Cir. 1999) (affirming summary judgment).

B.    **Alleged Harassment by Members**

1.    **The Alleged Acts Are Not Severe or Pervasive**

In her deposition, Plaintiff identified 10 male members of the Club who she claimed

sexually harassed her during their training sessions.  Pl. Dep. 184-95, 265-71.  She admits that

she trained with eight of the ten only once or twice, providing a free Equifit assessment followed

by a complimentary training session.  Id.; see also Cabeza Dec. Exhibit D.  She admits that none

of the people she trained with regularly made inappropriate comments to her.  Pl. Dep. at 125.

Plaintiff's complaints about the two members she trained more than twice, Portnoy and

Alsafa, involve behavior that is not sexual in nature.   She claims that Mr. Portnoy was

"aggressive" and she was annoyed with him because, "He wanted to do what he wanted to do

and that was it."  Id. at 188:16-189:21.  With regard to Mr. Alsafa, Plaintiff felt there were

cultural differences between them (because he is Indian), and she was bothered by his

"mannerisms."  Id. at 265:7-266:23.  She claims that "sometimes he may want to endure a little

more pain and so I got close" when performing a hamstring stretch on him.  Id. at 266:1-12.

Plaintiff admits that she was not offended to the degree where she fired them (or anyone else) as

clients.  Id. at 266:24-267:1.  Thus, these allegations are not severe, pervasive, or sexual.

Plaintiff's allegations concerning the eight members she trained only once or twice

involve comments that are neither severe nor pervasive.  A few of these members asked her out,

one talked in a sexual way about his wife (but she could not recall specifics), one stared at her,

and some commented on her appearance in ambiguous ways (e.g., one wanted to see her in a

dress and another wanted her to dress like his daughter).  See Pl. Dep. at 184-95, 265-71.

Plaintiff claims that the "worst thing" that was ever said to her was by a member named Burger, who "liken[ed] me to his daughter, and, you know, how he wanted to see me in sexy outfits like her." Id. at 195:12-25.  Plaintiff admits that despite this being the "worst thing" said to her, she cannot recall what Mr. Burger actually said to her.  Id.  All of these vague statements, which are isolated to one or two interactions with these members, are not severe, pervasive, or sexual in nature.

The Eleventh Circuit has held that being asked out repeatedly, coupled with other allegations worse than these, is insufficient to establish a hostile work environment.  See, e.g., Byrd v. Postmaster Gen., No. 13-15914, 2014 U.S. App. LEXIS 17055, **11-12 (11th Cir. Sep. 3, 2014) (plaintiff's allegations including being asked on dates, being called "baby," "sugar," "darling," "honey"; touching her arm, holding her hand, and rubbing her fingers did not constitute unlawful sexual harassment); Guthrie v. Waffle House, Inc., 460 F. App'x 803 (11th Cir. 2012) (allegations including a co-worker asking plaintiff on dates 10-20 times, grabbing her butt, talking dirty including saying five times that he wanted to fuck her and lick her were not severe or pervasive enough to create a hostile work environment).  Moreover, a man can compliment a woman's looks on several occasions "without fear of being found guilty of sexual harassment." Maganiello, No. 12-80722-Civ-Marra, 2013 U.S. Dist. LEXIS 175938 at *30 n.12.

The "severe or pervasive" element has both an objective and a subjective component. Mendoza, 195 F.3d at 1246.  The "behavior must be one that 'a reasonable person would find hostile or abusive' and that Plaintiff subjectively perceives to be 'abusive.'" Maganiello, No. 12-80722-Civ-Marra, 2013 U.S. Dist. LEXIS 175938 at *12 (quoting Mendoza).  The harassment's objective severity or pervasiveness "should be judged from the perspective of a reasonable

person in the plaintiff's position, considering all the circumstances." Byrd, No. 13-15914, 2014 U.S. App. LEXIS 17055 at *9 (citations omitted).

Even if we assume that Plaintiff found the alleged statements to be hostile or abusive, Plaintiff's own testimony demonstrates that her subjective belief was not reasonable. Maganiello, No. 12-80722-Civ-Marra, 2013 U.S. Dist. LEXIS 175938 at *31 n.13. Plaintiff admits that she was the only one who was uncomfortable and that it was the "culture" of South Beach. She admits that "no one else had a problem with it," and people encouraged her, "You're hot. Use it to your advantage." Pl. Dep. at 119:19-24, 121:16-20, 124:13-18. As noted in Oncale, the context of the Plaintiff's workplace should be considered. Plaintiff worked in a health club on South Beach where the dress code allows employees to wear short-shorts and t-shirts, and members have no dress code. Grys Dec. ¶¶ 32-33. The general atmosphere is relaxed and casual, and many people go to health clubs to meet and/or date others, and members and employees are allowed to date. Id. ¶ 34. Clearly, the cultural expectations are going to be different from certain other workplaces.

As in Maganiello, none of the isolated compliments, comments, or interactions with the members proffered by Plaintiff come anywhere near the minimum level of severity needed to establish sexual harassment. There are no claims of inappropriate physical conduct, the ambiguous comments proffered by Plaintiff are not sexually suggestive, and she does not claim that anyone made derogatory or degrading comments to her. Maganiello, No. 12-80722-Civ-Marra, 2013 U.S. Dist. LEXIS 175938 at **30-31.

## 2. Equinox Cannot Be Held Liable for the Alleged Actions of Its Members

Here, (other than the complaint regarding a co-worker which is addressed below) Plaintiff never complained about sexual harassment or made any other complaint pursuant to the

sexual harassment policy.  Grys Dec. ¶¶ 29, 31; Cabeza Dec. ¶¶ 32, 34; Hortis Dec. ¶ 21.  At best, Plaintiff claims that she told Mr. Hortis that one of the members told her he would "take [her] out on a lot of nice dates," and another time, in response to a member's complaint to Mr. Hortis about her, she claimed "when Marios came to me that he complained about me, I had, obviously, a lot to say back."[3]  Pl. Dep. at 116, 186; Hortis Dec. ¶ 22.

Generalized comments to a supervisor do not constitute actual notice for which to impose liability.  Miller v. Kenworth of Dothan Inc., 277 F.3d 1269, 1278 (11th Cir. 2002). Moreover, once a company has developed and promulgated an effective anti-sexual harassment policy "an employer is insulated from liability under Title VII for a hostile environment sexual harassment claim premised on constructive knowledge of the harassment."  Farley v. Am. Cast Iron Pipe Co., 115 F.3d 1548, 1554 (11th Cir. 1997).

Equinox has a comprehensive anti-harassment policy.  Grys Dec. Exhibit C. It was disseminated to Plaintiff at the time of hire.  Pl. Dep. at 94-95.  Plaintiff clearly knew how to complain under the policy as demonstrated by her complaint about Weinstein.  Therefore, even if Plaintiff's claims about the members could be construed to rise to the level of an actionable hostile work environment, there are no grounds under which to hold Equinox liable.  Farley, 115 F.3d at 1554.

**C.** **Plaintiff's Complaint About Her Co-Worker**

**1.** **The Alleged Acts Are Not Severe or Pervasive**

Plaintiff admittedly chose to leave Equinox to get in a car with a fellow trainer, Ari Weinstein.  Pl. Dep. at 99-100.  She claims that he made a pass at her while in the car and immediately outside the car.  Id. at 100-01.  Plaintiff was not on the clock as she was at the gym

---

[3] To her "recollection," it was Mr. Burger who complained about her.  Pl. Dep. at 186.

prior to meeting a personal training client.  Id. at 99:19-21.   This off-duty, off-premises conduct was resolved by Defendant by firing Mr. Weinstein. Grys Dec. ¶¶ 21-28; Cabeza Dec. ¶¶ 23-30. Defendant contends that this one-time event did not unreasonably interfere with Plaintiff's job performance, and was neither severe nor pervasive enough to prevent her from performing her job duties.  See Bussell, 141 F. App'x at 823 (affirming dismissal of hostile work environment claim where harasser pulled down the back of the plaintiff's pants and pulled up the top of her shirt, rubbed his crotch against her as he walked by 10-15 times in two months, and commented on the shape of her body and that the plaintiff must be sexually active).

### 2.        Equinox is Not Liable for Weinstein's Acts

Equinox had no prior sexual harassment complaints about Mr. Weinstein.  Grys Dec. ¶ 25.  It had communicated its comprehensive sexual harassment policy and complaint procedures to Plaintiff and Mr. Weinstein at the time of their hire.  Grys Dec. ¶¶ 9, 25; Pl. Dep. at 94-95. When Plaintiff's supervisors learned of Plaintiff's allegations about her co-worker, the complaint was investigated and Mr. Weinstein was discharged.  Cabeza Dec. ¶¶ 23-30; Pl. Dep. at 104, 108.  Equinox took additional steps to ensure Plaintiff would not see Mr. Weinstein elsewhere as Mr. Weinstein was instructed that he could no longer go into the Club.  Grys Dec. ¶ 26. Moreover, the General Manager of the Coral Gables Equinox was asked to ensure that Mr. Weinstein not enter that facility because Mr. Weinstein's girlfriend was employed there.  Krieger Dec. ¶ 28.[4]  As such, Equinox cannot be held liable for the alleged actions of Mr. Weinstein. Coates, 164 F. 3d at 1369 and n.6.

---

[4]   Although Plaintiff claims she saw Mr. Weinstein once at the Coral Gables Equinox, she did not report it.  Grys Dec. ¶ 26; Pl. Dep at 274:8-9; Krieger Dec. ¶ 29.  In any event Equinox took steps to prevent this from occurring.  Krieger Dec. ¶ 28.  P. v. Delta Air Lines, Inc., 102 F. Supp. 2d 132, 142 (E.D.N.Y. 2000) (plaintiff's trepidation that she may encounter her harasser after an

## POINT II

## PLAINTIFF FAILS TO PROVE RETALIATION

### A.   Plaintiff Cannot Meet Her Heightened Burden of Proof Under Nassar

In the summer of 2013, the Supreme Court of the United States clarified and heightened a plaintiff's burden of proof in demonstrating retaliation under Title VII.  See University of Tex. S.W. Med. Ctr. v. Nassar, 133 S. Ct. 2517 (2013).  The Court held:

> The text, structure, and history of Title VII demonstrate that a plaintiff making a retaliation claim under § 2000e-3(a) must establish that his or his protected activity **was a but-for cause of the alleged adverse action by the employer**.

Id. at 2534 (emphasis added).  Under Nassar, "retaliation claims must be proved according to traditional principles of *but–for causation* . . . requir[ing] proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.  Id. at 2533 (emphasis in original).[5]  Defendant contends Plaintiff cannot prove either a prima facie case of retaliation or that the reasons for her discharge were pretextual.

### 1.    Plaintiff Cannot Establish a Prima Facie Case of Retaliation

To establish a *prima facie* case of retaliation, Plaintiff "must show that: (1) [s]he engaged in statutorily protected activity; (2) [s]he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action."  Howard v. Walgreen Co., 605 F.3d 1239, 1244 (11th Cir. 2010); *accord* Thomas v. Cooper Lighting, Inc., 506 F.3d 1361, 1363 (11th Cir. 2007).  To establish a causual connection, "a plaintiff must demonstrate that the employer's desire to retaliate was a but-for cause of the materially adverse action."

---

attack was "too hypothetical and speculative to support a contention that there was an 'objectively hostile or abusive work environment").

[5]  The burden of proof under Nassar applies to retaliation under FCRA.  Fuller v. Edward B. Stimpson Co., Inc., 971 F. Supp. 2d 1146, 1166 (S.D. Fla. 2013).

Jones v. Suburban Propane, Inc., No. 14-10323, 2014 U.S. App. LEXIS 15894, *7 (11th Cir. Aug. 19, 2014).  Plaintiff cannot establish the first or third prongs of her *prima facie* case.

Plaintiff claims that she was retaliated against based on her late May/early June 2012 complaint about co-worker, Ari Weinstein.  Pl. Dep. at 293.  This does not constitute protected activity because "[a]n employee's opposition to an act of discrimination or harassment by a co-worker, does not fall within the protection of Title VII unless the discrimination can by attributed to the employer, because Title VII only prohibits unlawful employment practices on the part of the employer, not its employees."   Bicknell v. City of St. Petersburg, No. 8:03-CV-1045-T-27MAP, 2006 U.S. Dist. LEXIS 8789, at *21 (M.D. Fla. Mar. 6, 2006) (citing Little v. United Techs,. Carrier Transicold Div., 103 F.3d 956, 959-60 (11th Cir. 1997)). "[S]exual assault by a co-worker does not constitute an employment practice proscribed by Title VII."  Id.

Even if this complaint were protected activity, Plaintiff cannot link this complaint, which was immediately addressed by Equinox, to her removal as a personal trainer four months later in October 2012 for poor production.  Cabeza Dec. ¶ 22.  It is undisputed that Plaintiff came nowhere near the minimum productivity requirements at any point in her employment.  See Krieger Dec. Exhibit. B.  Her complaint about Weinstein is even more attenuated from her ultimate termination from Equinox in December 2012 after Equinox learned that Plaintiff was attempting to solicit her former Equinox clients to train outside the Club.  Grys Dec. ¶¶ 41-42 and Exhibit F thereto; Pl. Dep. at 138, 140-42.  As such, there is no causal connection to her complaint about Weinstein.

> **2.**    **Plaintiff Cannot Establish That Defendant's
> Non-Discriminatory Reasons are Pretextual**

Assuming Plaintiff could establish a prima facie case, her retaliation claim nevertheless fails because Equinox has met its burden of articulating legitimate, non-discriminatory reasons

for its actions:  she was discharged as a trainer as she never met the minimum production numbers required of trainers, and she later was discharged as a group fitness instructor for soliciting her former Equinox clients to train outside of Equinox.  Grys Dec. ¶¶ 20, 39, 41-42. See Malewski v. NationsBank of Fla., N.A., 978 F. Supp. 1095, 1096 (S.D. Fla. 1997) (defendant's only burden is to produce evidence of a legitimate nondiscriminatory reason for its employment decision).

As Equinox has met the burden of articulating legitimate, non-discriminatory reasons for its adverse employment actions, Plaintiff must prove by a preponderance of the evidence that the reason asserted by the employer is pretext.  Specifically, the burden shifts back to Plaintiff to "introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997). The Court must then evaluate whether the plaintiff has demonstrated "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence." Combs v. Plantation Patterns, Meadowcraft, Inc., 106 F.3d 1519, 1538 (11th Cir. 1997).  The proper inquiry is not whether Equinox's reasons for its actions (i.e., poor production and soliciting members) were correct, but rather, whether Equinox reasonably believed the employee committed the infractions which led to the termination.  EEOC v. Total Sys. Servs., Inc., 221 F.3d 1171, 1176-77 (11th Cir. 2000); Allocco v. City of Coral Gables, 221 F. Supp. 2d 1317, 1371-72 (S.D. Fla. 2002).

Here, a review of Plaintiff's training sessions shows that she never met Equinox's **minimum** production requirements.  Krieger Dec. Exhibit B; Cabeza Dec. Exhibit D.  With regard to her ultimate discharge from Equinox, when Plaintiff was no longer a trainer but was

still teaching group fitness classes, Mr. Grys was advised that Plaintiff had solicited two of her former clients to train outside the Club.  He did not terminate her immediately.  Rather, he approached Plaintiff to address the issue, but she admittedly ignored him.  Grys Dec. ¶¶ 41-42; Plaintiff Dep. at 140:8-142:10.

Defendant could have discharged Plaintiff in early September 2012 when she was found to be violating her non-compete contract the first time; but she was given another chance.  When she was discharged as a trainer, she was allowed to remain employed as a group fitness instructor.  Defendant contends these additional facts support the conclusion that its reasons are not pretextual and that there is no inference of retaliatory motive.  Grys Dec. ¶¶ 35, 36, 40.  As Plaintiff has failed to provide <u>any</u> evidence linking her complaint with her adverse employment actions, it is clear that protected activity was <u>not</u> the "but for" cause for termination.  Thus, summary judgment is appropriate.

**POINT III**

**PLAINTIFF FAILS TO PROVE A VIOLATION OF THE FLSA**

Defendant's records demonstrate that Plaintiff was accurately compensated $8.00 per hour for all time attending meetings, educational training, and working Floor Hours, and $11 per hour  for Equifits and the complimentary session.  Cabeza Dec. Exhibits D, E, F.  Defendant's records also demonstrate that Plaintiff was paid a significant session rate ($23.00 and $26.50) for the personal training sessions she conducted, and was paid $50 per hour-long group fitness class.  Cabeza Dec. Exhibits D, F.  These significant session and class rates covered all activities associated with time performed during or outside the sessions and classes, including

communicating with clients, programming, and preparation.  Cabeza Dec. ¶ 53 and Exhibits B, C.[6]

Plaintiff claims that she was not paid for time worked off the clock.  Essentially, the gist of her claim is that she was <u>always</u> at the Club but was not paid for time she spent <u>between</u> her scheduled paid Floor Shifts, training sessions, and fitness classes. Plaintiff's allegations are pulled from "thin air."

In her Statement of Claim, Plaintiff's request for damages is based on working 50 weeks (which is false),[7] and her estimate that she worked "at least 72 hours per week."  D.E. 18. Notably, her Statement of Claim **admittedly** has no factual basis whatsoever, and is based on what she *thought she could make*.  <u>See</u>, <u>e.g.</u>, Pl. Dep. at 277:12-22; 279:12-280:3; 280:4-22; 281:3-281:24; 281:25-282:11; 282:12-23; 283:15-19.   For example, Plaintiff admitted in her deposition that the hourly rate she was using in her Statement of Claim was **$9 per hour higher** than what she actually was paid.  Pl. Dep. 280:23-281:2.  Plaintiff admittedly has no supporting documents.  D.E. 18.

Plaintiff is not entitled to be paid for what she calls was her "free time" at the Club [D.E. 18] because **based on her own admissions**: 1) she was not specifically directed to be working; 2) she has no witnesses who will support the number of hours she claimed to be working off the clock; 3) she was the only trainer who was working such hours; 4) she "hopes" her supervisors

---

[6]  Paying a commission or flat rate for all time related to the preparation, performance, and completion of a task is a valid form of compensation under the FLSA.  <u>See</u>, <u>e.g.</u>, 29 U.S.C. § 207(i) and § 207(g).  Pay systems involving piece-rate compensation and different hourly rates are valid under the FLSA. <u>See</u>, <u>e.g.</u>, 29 U.S.C. § 207(g)(2); <u>Allen v. Bd. of Pub. Educ. for Bibb County</u>, 495 F.3d 1306, 1310-13 (11th Cir. 2007).

[7]  Plaintiff's FLSA claim was filed on June 18, 2014, thus the applicable two-year statute of limitations commences as of June 18, 2012.  Her services as a personal trainer ended on October 9, 2012, thus there are approximately 16 weeks at issue.  Grys Dec. ¶ 39; Pl. Dep. at 277:12-25.

knew she was working; and 5) her claim is based on speculation as to when she claims to have worked and what she claims she was doing. Pl. Dep. at 154:6-155:1; 155:19-23; 169:15-22; 278:24-279:5; 283:20-286:4.

## A.    Plaintiff Cannot Demonstrate She Performed Work for Which She Was Not Paid

It is well-settled that an employee who claims she was not properly compensated for work performed off-the clock must demonstrate she completed work for which she was not compensated.  Anderson v. Mt. Clemons Pottery Co., 328 U.S. 686-87 (1946). While an employee's "recollection" may be used where an employer's records are unreliable (which is not the case here)[8] a plaintiff who cannot provide specific facts showing when and for how long she performed off-the-clock work fails to meet her ultimate burden demonstrating she performed work for the employer about which the employer was aware.  Seever v. Carrols Corp., 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (holding that an employee's "approximations" and "recollections" could not be used to satisfy the burden of proof in an FLSA case).

"[A] general assertion that a worker performed uncompensated overtime work for an employer still will not do.  There is a need for particularization of the claim."  Joza v. Ramada Plaza Hotel, No. 07-CV-4153, 2010 U.S. Dist. LEXIS 94419, at *20 (E.D.N.Y. Sept. 10, 2010). "[A] worker must proffer nonetheless 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference.'"  Id. (citations omitted). "'[N]ebulous' and 'uncorroborated' recollections of the plaintiff[]" are insufficient to establish uncompensated work."  Id. at **23-24.  In holding that the plaintiff could not rely on her "recollection," the court emphasized "that absent a credible explanation, the failure of an employee to use a recognized

---

[8]    Defendant contends that Plaintiff's Commission and Time Detail Reports as well as Defendant's payroll records show that she was paid for all training sessions, meetings, orientation, fitness classes, and Floor Shifts.  Cabeza Dec. Exhibits D, E, F.

system for reporting and obtaining compensation for overtime work, the burden of evidentiary

production does not shift to the employer [and cannot be satisfied by mere 'recollection'].'  Id. at

*29.[9]

      Plaintiff has proffered only vague guesses as to when she allegedly worked off the clock.

See, e.g., Pl. Dep. at 277-86.  Moreover, although Plaintiff claims that she was at the Club up 18

hours per day, she did not know the Club's hours (admitting that "it would help if we know when

it opened and closed so we can do the actual math"), or the fact that the Club is not even open 18

hours per day.  Grys Dec. ¶ 57; Pl. Dep. at 154:6-10; 156:14-157:12; 158:4-6; 284:4-7; 285:23-

25.  Additionally, Plaintiff's mere "guesstimations" as to how much time she claims she worked

are even more unreliable when we take into account the other daily aspects of her life such as her

multiple hobbies, walking her dog two hours per day, working out an hour a day, training for two

half marathons in 2012, going home for lunch, running on the beach, her bartending job at Wet

Willies, her hostessing job at 5 Napkin Grill, and working as a trainer at a competing gym.[10]  Pl.

Dep. at 20, 22, 44, 156, 159, 173, 220-21, 279, 285, 291 and Exhibit 20 thereto.

      Plaintiff also fails to meet her burden of proof because she cannot show that she was

performing compensable work for which she should be paid.  When asked what she was doing

during the time she seeks to be paid, Plaintiff could only provide generalizations:  **"Just being**

---

[9]  In Gonzalez v. Metropolitan Delivery Corp., No. 10-23296-Civ-Scola, 2012 U.S. Dist. LEXIS 63687 (S.D. Fla. May 7, 2012), Judge Scola barred the plaintiffs from testifying as to "speculative averaging".  Id. at *8.  The court further found that plaintiffs' statement of claim "which is based on a mere 'average' number of hours allegedly worked per week . . . . appears to have been pulled from thin air.  This will not do. . . . Plaintiffs may not fill in the blanks with speculation, hypothesization, and guesswork."  Id. at *7.

[10]  Where the amount of overtime is "so substantial," it is "implausible" that the employer issued a directive to be working "at all times."  See generally Gaylord v. Miami-Dade County, 78 F. Supp. 2d 1320, 1325-27 (S.D. Fla. 1999) (granting judgment as a matter of law to employer where it had "no independent means of knowing" how the plaintiff spent time he was not claiming as compensable).

there, face time, walking around, talking to people offering free sessions." <u>Id.</u> at 155:19-23;

<u>see</u> <u>also</u> <u>id.</u> at 159:22-25.  Plaintiff admitted that she spent **"hours standing by the front desk"**

**(where her roommate worked), and "a lot of time" in the shop with Kristin Chucci.**  Pl.

Dep. 225:22-226:1.  Equinox does not pay its employees to hang around between their shifts.

Grys. Dec. ¶ 61.

Defendant contends that Plaintiff's vague guesses and recollections about the hours she

allegedly worked and what she allegedly was doing are an attempt to manipulate the judicial

process.  She has no records and never raised these issues during her employment.  Cabeza Dec.

¶ 56.  As such, it is clear that Plaintiff has failed to meet her burden of demonstrating that she

performed work for which she was not paid.

**B.      Equinox Did Not Have Actual or Constructive Knowledge**
**          of Plaintiff's Alleged Off-the-Clock Activities                    **

Even if Plaintiff demonstrated she performed work for which she was not paid, she failed

to demonstrate actual or constructive knowledge on the part of Equinox.  <u>Debose v. Broward</u>

<u>Health</u>, No. 08-61411-Civ-Moore, 2009 U.S. Dist. LEXIS 117509, **30-31 (S.D. Fla. Dec. 17,

2009). To prevail on an off-the-clock claim, Plaintiff must prove that Defendant had actual or

constructive knowledge that she worked off the clock.  <u>White v. Starbucks Corp.</u>, 497 F. Supp.

2d 1080, 1083 (N.D. Cal. 2007).  Plaintiff cannot meet this burden and she admittedly cannot

point to anyone to support her off-the-clock claim.  Pl. Dep. at 169, 174, 278-79.

"An employer is said to have constructive knowledge of its employee's overtime work

when it has reason to believe that its employee is working beyond his shift. The employer's

knowledge is measured in accordance with [its] duty…to inquire into the conditions prevailing in

[its] business.'"  <u>Allen</u>, 495 F.3d at 319; <u>see</u> <u>also</u> 29 C.F.R. § 785.11.  In assessing an employer's

knowledge, the inquiry considers "whether the circumstances were such that the employer either

had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge." Debose, No. 08-61411-Civ-Moore, 2009 U.S. Dist. LEXIS 117509 *31 (citing Reich v. Dep't of Conservation & Nat'l Res., 28 F.3d 1076, 1082 (11th Cir. 1994)).

Plaintiff's supervisors lack actual knowledge and Plaintiff has failed to proffer evidence showing they should have known she was working. As the trainers have free Club memberships their presence in the Club is not questioned when they are not working.[11] Cabeza Dec. ¶ 50. Additionally, trainers set their own training schedules with the members so Equinox management is not necessarily aware of their training schedules. Id. If trainers set their training sessions with a time gap, e.g., an hour in between, they are free to leave the gym or work out. Id. Thus, Plaintiff's presence in the Club would not be an indicator to anyone that she was working. This is especially true given the fact that when she was not training clients, Plaintiff usually was seen socializing with other employees, but not doing anything that could be construed as compensable work. Cabeza Dec. ¶ 51; Hortis Dec. ¶ 33. Plaintiff even admits that she spent "hours standing by the front desk" (where her roommate worked), and "a lot of time" in the clothing shop. Pl. Dep. 225:22-226:1. Finally, Equinox's policies require trainers to obtain management approval to work overtime and prohibit off-the-clock work. Grys Dec. ¶¶ 46, 57 Exhibits G, H. See Lewis v. The Keiser School, Inc., No. 11-62176-Civ-Scola, 2012 U.S. Dist. LEXIS 147150, **6-7 (S.D. Fla. Oct. 12, 2012) (where plaintiff clocked herself in and out and accounted for her own time, the court was unwilling to attribute to employer actual or

---

[11]   Trainers are told that **working out** in the Club, not hanging out and socializing, gives them visibility. Plaintiff admits the other trainers were working out during the time she is seeking to be paid. Pl. Dep. at 169:15-22.

constructive knowledge of off-the-clock work where there was no evidence to show employer had reason to believe the plaintiff was working).

In <u>White v. Starbucks</u>, as here, the plaintiff testified that when he worked off the clock, other employees had no knowledge if he was on or off.  The court held that White's assumptions as to what his manager knew or did not know were insufficient to create a question of fact, and granted summary judgment.  497 F. Supp. 2d at 1084-85.  In this case, when asked to provide the names of people who were aware of what she was doing during this alleged off-the-clock time, Plaintiff replied "no one else was there all day with me."  Pl. Dep. at 169, 174.  Plaintiff can only proffer her "hope" that her supervisors knew that she was "trying."  Pl. Dep. at 278-79.  This is insufficient to defeat summary judgment.

Defendant contends that Plaintiff has failed to prove that she, in fact, performed work for which she was improperly compensated, or proffer sufficient evidence to show the amount and extent of that work.  <u>Anderson</u>, 328 U.S. at 687.  However, even if she had, Equinox has met its burden of coming forth with evidence to negate the reasonableness of any possible inferences that could be drawn from Plaintiff's "evidence."  <u>Id.</u> at 687-77.  As such, summary judgment dismissing Count III is appropriate.

<b><u>CONCLUSION</u></b>

Based on the facts and arguments presented herein and in the supporting documentation, summary judgment is appropriate and the Amended Complaint should be dismissed with prejudice.

CASE NO. 9:14-80361-CIV-COHN/SELTZER

Dated:  September 19, 2014
       Miami, Florida

                      Respectfully submitted,

                      JACKSON LEWIS P.C.
                      One Biscayne Tower, Suite 3500
                      2 South Biscayne Boulevard
                      Miami, Florida 33131
                      Telephone:  (305) 577-7600
                      Facsimile:   (305) 373-4466

By: s/ Christine L. Wilson
                      Christine L. Wilson, Esq.
                      E-mail:  *wilsonc@jacksonlewis.com*
                      Florida Bar No. 143588
                      Anisley Tarragona
                      E-mail:*Anisley.Tarragona@jacksonlewis.com*
                      Florida Bar No.: 051626

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that a true and correct copy of the foregoing document is being served on September 19, 2014 on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

                      Anisley Tarragona
                      Anisley Tarragona, Esq.

CASE NO. 9:14-80361-CIV-COHN/SELTZER

## SERVICE LIST

### Karlyle Alvino v. Equinox Holdings Inc.

**CASE NO. 9:14-80361-CIV-COHN/SELTZER**
**United States District Court - Southern District of Florida**

| | |
|---|---|
| G. Ware Cornell, Jr., Esq.<br>Florida Bar No. 203920<br>E-mail: warecornell@gmail.com<br>Cornell & Associates, P.A.<br>2645 Executive Park Drive<br>Weston, Florida  33331<br>Telephone: 954-618-1041<br>Facsimile:  954-524-2706<br><br>**COUNSEL FOR PLAINTIFF**<br>**KARLYLE ALVINO**<br><br><br><br>Served via transmission of Notices of<br>Electronic Filing generated by CM/ECF | Christine Lynne Wilson, Esq.<br>Florida Bar No. 143588<br>E-mail: WilsonC@JacksonLewis.com<br>Anisley Tarragona, Esq.<br>Florida Bar No. 51626<br>E-mail: Anisley.Tarragona@JacksonLewis.com<br>Jackson Lewis P.C.<br>One Biscayne Tower<br>2 S Biscayne Boulevard, Suite 3500<br>Miami, FL 33131-1802<br>Telephone: 305-577-7600<br>Facsimile:  305-373-4466<br><br>**COUNSEL FOR DEFENDANT**<br>**EQUINOX HOLDINGS INC.**<br><br>Served via transmission of Notices of<br>Electronic Filing generated by CM/ECF |