UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:14-80361-CIV-COHN/SELTZER

KARLYLE ALVINO,           )
                          )
        Plaintiff,        )
                          )
v.                        )
                          )
EQUINOX HOLDINGS INC.,    )
                          )
        Defendant.        )
                          )

**DEFENDANT EQUINOX HOLDINGS, INC.'S RULE 56.1(a) STATEMENT
OF UNDISPUTED FACTS SUPPORTING SUMMARY JUDGMENT**[1]

**General Background Regarding Plaintiff's Employment**

1.  Plaintiff was hired on or about January 6, 2012 to work as a personal trainer at Equinox South Beach (the "Club" or "Equinox"), reporting to Personal Training Manager Lizette Cabeza and Fitness Manager Marios Hortis.  Grys Dec. ¶ 5.  She signed an Employment Agreement with a non-compete provision.  Pl. Dep. at 33-34, 95 and Exhibit 4 thereto.

2.  Pursuant to Equinox's general practices, Plaintiff was trained in and received Equinox policies governing Sexual Harassment.  Grys Dec. ¶ 9; Pl. Dep. at 94-95 and Exhibit 3 thereto.

**Equinox's Requirements for Personal Trainers**

3.  Personal trainers are assigned paid Floor Shifts several days per week to provide them an opportunity to obtain personal training clients.  Floor time allows the trainers to market their skills and to solicit additional personal training clients.  Grys Dec. ¶ 11; Pl. Dep. at 81.

---

[1] Defendant's Motion is supported by the sworn declarations of Christopher Grys ("Grys Dec."), Lizette Cabeza ("Cabeza Dec."), Marios Hortis ("Hortis Dec."), P. Thomas Krieger ("Krieger Dec."), and Julie Harston ("Harston Dec."), as well as relevant pages of Plaintiff's deposition transcript (cited as "Pl. Dep.").

4. Trainers are encouraged to spend time in the gym working out or training with other trainers so that members will meet them and be enticed into training with them. To that end, personal trainers are given free Equinox memberships, valued at $2,156.05 per year in 2012, so that they can work out at the Club at no cost. Grys Dec. ¶ 15; Krieger Dec. ¶ 9.

5. In 2012, all new trainers had the same production expectations. After the first full month they should have had a minimum of 15 paid sessions; the second month: a minimum of 25 paid sessions; the third month: a minimum of 40 paid sessions; the fourth month: a minimum of 65 paid sessions; and by the fifth month they should have reached a minimum of 90 paid sessions. Krieger Dec. ¶ 6 and Exhibit A thereto; Grys Dec. ¶ 16; Pl. Dep. at 151:16-24.

6. Trainers are generally given five to six months after which their employment is terminated if they are not accomplishing their goals. Grys Dec. ¶ 17; Krieger Dec. ¶ 6.

7. While Equinox encourages trainers to gain face time with members when they are in the Club, they are expected to be working or working out. They are asked to not congregate at the front desk and to not hang out in the juice bar area when working. Grys Dec. ¶ 19.

**Plaintiff Was Never a Successful Trainer at Any Time During Her Employment**

8. From the commencement of her employment, Plaintiff admittedly struggled with gaining clients. Pl. Dep. at 113:21-114:4, 151:16-152:7; 281:3-5.

9. In February 2012, she had a total of 8 paid sessions when she was expected to reach a minimum of 15 paid sessions. In March 2012, she had 10 paid sessions when she was expected to have 25. In April and May she had 17 and 19 paid sessions, respectively, when she was expected to have 40 in April and 65 in May. While Plaintiff should have reached 90 paid sessions by June, Plaintiff had only 20 paid sessions in June, 33 in July, and 32 in August. Cabeza Dec. ¶ 15; Krieger Dec. Exhibit B; Grys Dec. ¶ 20.

10. Plaintiff was consistently in the bottom half of all trainers and was often at the very bottom. Cabeza Dec. ¶ 16; Grys Dec. ¶ 20.

11. Plaintiff was regularly coached by the Personal Training Manager, the General Manager, and the Fitness Manager about this shortcoming. Cabeza Dec. ¶ 20; Grys Dec. ¶ 30; Hortis Dec. ¶ 11.

12. In early September 2012, Equinox management met with Plaintiff to address an advertisement for South Florida Boxing asking people to train with "Karlyle" because training with another gym violated her non-compete agreement. Grys. Dec. ¶ 35; Cabeza Dec. ¶¶ 18-19. Plaintiff admitted she was working for a competitor and promised she would quit her other job. Equinox decided to give her another chance. Grys Dec. ¶ 36; Pl. Dep. at 95-96.

13. At the end of eight full months as trainer, in September 2012, Plaintiff was ranked 17th out of 19 trainers. She conducted only 17 paid training sessions in comparison to the minimum requirement of 90. Cabeza Dec. ¶ 20; Pl. Dep. at 132:18-133:18.

14. As Plaintiff was coming nowhere near the required minimum monthly training sessions, on October 9, 2012, Ms. Cabeza and Mr. Hortis met with Plaintiff to terminate her services as a personal trainer. Cabeza Dec. ¶ 22; Hortis Dec. ¶ 16; Pl. Dep. at 134:2-4.

**Plaintiff Was Soliciting Members to Train Outside the Club**

15. In October 2012, Plaintiff was also teaching two Group Fitness classes per week: a half-hour abdominals class and a 45-minute kettle bell class. Grys Dec. ¶¶ 40, 56. Plaintiff was allowed to remain employed by Equinox as a group fitness instructor. Grys Dec. ¶ 40; Pl. Dep. at 137-38.

16. In late November 2012, Mr. Grys learned from a personal trainer that two of Plaintiff's former clients had advised her that they had been approached by Plaintiff to train

3

outside of Equinox. Grys Dec. ¶ 41. Plaintiff admits that she was aware that she was prohibited from soliciting members to train outside of Equinox. Pl. Dep. 98:14-20.

17. A Club member confirms that she paid Plaintiff $60 per hour to train her in December 2012. Harston Dec. ¶ 4.

18. Mr. Grys sent Plaintiff an e-mail on November 28, 2012 advising her of this fact and asking her for confirmation of her understanding. Pl. Dep. at 138:20-25 and Exhibit 9 thereto. Plaintiff never responded to this e-mail. Pl. Dep. 140:8-142:10; Grys Dec. ¶ 42.

19. Mr. Grys directed Group Fitness Director Geoff Bagshaw to terminate Plaintiff's services as a group fitness instructor for violation of her non-compete. Plaintiff's employment with Equinox ended effective December 31, 2012. Grys Dec. ¶ 42.

**Plaintiff's Complaint About a Co-Worker Was Addressed Immediately**

20. In late May/early June 2012, Mr. Grys learned from Plaintiff that another trainer, Ari Weinstein, allegedly had asked her to go outside the Club with him when he moved his car in the parking garage. She claimed that after Mr. Weinstein moved the car, he attempted to put his arm around her and reach under her rear-end. She claimed when she rebuffed Mr. Weinstein and got out of the car, Mr. Weinstein again tried to put his arm around her and touch her. She claimed that this incident had just occurred that morning. Grys Dec. ¶ 21; Cabeza Dec. ¶ 23.[2]

21. Plaintiff claims she has a memory loss about the events of that day and, she "genuinely [doesn't] remember anything." Pl. Dep. at 102:13-16. At her deposition, Plaintiff did not dispute talking to Mr. Grys the same day of the event. Instead, she claimed that she did not recall talking to him or the story she told him because the two weeks following the event are "just a blur." Id.

---

[2] Plaintiff cannot recall the specific date of the alleged assault but believes it was in May 2012. Pl. Dep. 256:24-257:2.

Case 9:14-cv-80361-JIC Document 24 Entered on FLSD Docket 09/19/2014 Page 5 of 12

CASE NO. 9:14-80361-CIV-COHN/SELTZER

22. Mr. Grys directed Plaintiff to speak to her female supervisor, Lizette Cabeza, and told her that Equinox would have to advise Human Resources. Grys Dec. ¶ 22.

23. Ms. Cabeza and the Regional Manager Brett Orlando contacted Human Resources Lauren Pacifico and worked with Ms. Pacifico to investigate this allegation. Cabeza Dec. ¶¶ 24-25.

24. Plaintiff admits speaking to a Human Resources representative on the telephone but "[doesn't] remember anything" else about what she told the Human Resources representative or Ms. Cabeza. Pl. Dep. 104:2-12.

25. Mr. Weinstein was interviewed by Ms. Cabeza and Mr. Orlando, and denied any wrongdoing. Cabeza Dec. ¶ 24.

26. Mr. Weinstein's employment was terminated on June 5, 2012. Grys Dec. ¶ 23; Cabeza Dec. ¶ 27. Plaintiff admits Mr. Weinstein's discharge occurred "very shortly" after she spoke to Human Resources, "the next day or within the next week" Pl. Dep. at 108:3-9.

27. Other than the complaint by Plaintiff, Equinox had not received any other sexual harassment complaints about Mr. Weinstein, who had been trained about Equinox's anti-harassment policy. Grys Dec. ¶ 25; Cabeza Dec. ¶ 28.

28. Mr. Weinstein was told that he could not enter the South Beach Equinox club for an indefinite period of time. Grys Dec. ¶ 26. Because Mr. Weinstein's girlfriend worked at the Coral Gables Equinox, the Coral Gables General Manager, Tom Krieger, was advised that Mr. Weinstein was barred from that club because he had been fired. Krieger Dec. ¶ 28. Plaintiff never reported seeing Mr. Weinstein in the Coral Gables club. Grys Dec. ¶ 26; Pl. Dep. at 274:8-9; Krieger Dec. ¶ 29.

29. Mr. Weinstein was Plaintiff's co-worker. He was a personal trainer and had no ability to affect or influence the terms and conditions of Plaintiff's employment. Grys Dec. ¶ 27; Cabeza Dec. ¶ 29; Hortis Dec. ¶ 18.

30. Plaintiff never made any other complaints about Mr. Weinstein or any other Equinox employee during her employment. Grys Dec. ¶ 28; Cabeza Dec. ¶ 30.

**Plaintiff Made No Other Allegations Concerning Sexual Harassment**

31. Plaintiff never made any other complaints of sexual harassment to Equinox. Grys Dec. ¶¶ 28, 31; Cabeza Dec. ¶ 32; Hortis Dec. ¶ 21.

32. While Plaintiff mentioned that she believed that the members did not want to train with her because they were more interested in dating her, at no time did she claim that she found the Club an uncomfortable place to work or that anyone was creating a sexually hostile work environment for her. Grys Dec. ¶¶ 29-31; Cabeza Dec. ¶¶ 32, 33; Hortis Dec. ¶ 21.

33. Plaintiff was expected to comply with the dress code for trainers which is a short-sleeve Equinox cotton t-shirt and black sweatpants, shorts or leggings of her own choosing. Pl. Dep. at 127:1-5; Grys Dec. ¶ 32. She was never told to wear a certain type of bra under her t-shirt. Cabeza Dec. ¶ 35.

34. Plaintiff's claims regarding sexual harassment by Club members are limited to eight members she trained no more than twice, and two members she trained several times. Pl. Dep. at 184-95, 265-70. She admits that none of her regular clients made inappropriate comments to her. Pl. Dep. at 125:8-14.

35. None of Plaintiff's allegations involve overtly sexual comments and range from claims that she was asked on dates and received comments about her looks, to completely nonsexual issues relating to their differences in how to train. Pl. Dep. at 184-95; 265-70.

36. Plaintiff approached Mr. Hortis about a male member who asked her out on a date. When Mr. Hortis offered to speak with the member, Plaintiff declined his offer and asked him not to approach the member as "it is no big deal." Hortis Dec. ¶ 22.

37. Plaintiff admits that no one else was bothered by the "culture," and "I seem[ed] to be the only one uncomfortable with it." Pl. Dep. at 119-20.

**Plaintiff Was Paid Properly for All Time Worked**

38. In 2012, Equinox used two electronic timekeeping systems to record and capture time: E-Time and E-Club. E-Time is an electronic system used to track time worked on floor shifts. Trainers were required to clock in at the beginning of each floor shift and to clock out at the end of each floor shift. E-Time was also used to track all meetings, and mandatory seminars/educational training classes. Grys. Dec. ¶ 43; Pl. Dep. 127:6-19.

39. E-Club was the system used for tracking personal training sessions and related tasks. A voucher was pulled when the member first arrived for the training session. Once the voucher was collected, the member's account was deducted and the session was entered into E-Club. Personal training reports were printed at the end of each pay period and placed in each trainer's mailbox – each trainer had the opportunity to make any changes and verify the information as accurate. Grys. Dec. ¶ 44; Pl. Dep. 87:5-18.

40. Each employee was responsible for accurately recording their total time worked, and Plaintiff admits that she did. Pl. Dep. at 178. Trainers were given a productivity report on a weekly basis to ensure all of their training sessions were captured by the system. Plaintiff never complained or reported during her employment that she was paid inaccurately. Grys Dec. ¶¶ 45, 55; Cabeza Dec. ¶ 57.

41. Plaintiff admits that she always reported every person she trained, truthfully reported her time, told the truth on all documents she filled out at Equinox, and she has no knowledge that she was not paid for any training sessions. Pl. Dep. 17, 178-79.

42. Plaintiff was paid $8.00 per hour for all time during orientation. Grys Dec. ¶ 47; Pl. Dep. at 74-75. Personal trainers are paid $8.00 per hour for Equinox Fitness Training Institute ("EFTI"); $8.00 per hour for PT Forum; $8.00 per hour for Floor Shifts. Grys Dec. ¶ 48; Pl. Dep. at 84:9-12, 130:15-20.

43. Personal trainers receive $11.00 per hour for Equifit sessions; and $11.00 per hour for the members' complimentary training sessions. Grys Dec. ¶ 48.

44. As a Tier I Trainer, Plaintiff was paid $23.00 per session. Cabeza Dec. ¶ 41; Pl. Dep. at 129:9-16. She was raised to a Tier II Trainer at the end of February 2012 after which she was paid $26.50 per session. The session rates for trainers increased at the end of September 2012. Cabeza Dec. ¶ 41 and Exhibits B and C thereto.

45. Trainers are advised that these session rates include all activities associated with the training session which may be performed during or outside the actual training session such as obtaining and communicating with the client, creating and updating the plan, and scheduling. Id. and Exhibit C thereto; Krieger Dec. ¶ 22; Grys Dec. ¶ 51.

46. Plaintiff does not recall if she ever questioned how she was paid with an Equinox manager. Pl. Dep. at 131:21-132:12.

47. Equinox provides its personal trainers with access to a subscription-only website called PT on the Net which simplifies the trainers' creation of training plans. Creation of a training program for a weekly client should take between 15 and 30 minutes. Programming is not necessary every session, only when trainers bring on a new client or when a client starts a

new program. An Equifit session does not require preparation of a program and 15 to 30 minutes are required for the member's complimentary session. Grys Dec. ¶ 53; Cabeza Dec. ¶ 43.

48. Plaintiff's Performance Commission Report and payroll records demonstrate she was properly paid for all personal training sessions, Equifits, and complimentary training sessions. Cabeza Dec. ¶¶ 46, 48 and Exhibits D and F thereto.

49. Plaintiff was properly paid for all scheduled Floor Shifts, PT Forum meetings, and EFTI. Cabeza Dec. ¶ 48 and Exhibits E and F thereto.

50. Group fitness instructors are paid $50 per hour-long class which covers time for the one-hour class and any time needed to prepare for it such as putting together a music play list. If the class is one half-hour long, they are paid $25 for all time involved including the class and preparation for the class. If a class is 45 minutes, the instructors are paid as if it were a full one-hour class, $50. Grys Dec. ¶ 56; Pl. Dep. at 92:16-19.

51. Defendant's records show that Plaintiff worked from a low of 12.5 hours per week to no more than 29.6 hours per week. Cabeza Dec. ¶ 46 and Exhibits D and E thereto.

52. Plaintiff "hope[s]" her supervisors knew the hours she claims she was working off the clock. Pl. Dep. at 278-79.

53. Plaintiff was often seen hanging out at the juice bar or by the front desk (where one of her roommates worked), or frequenting in the clothing shop where a friend of hers was employed. Grys Dec. ¶ 60; Cabeza Dec. ¶ 51; Hortis Dec. ¶ 33. Plaintiff generally was socializing with other employees – not doing anything that was directed by management or that could be construed as compensable work. Grys Dec. ¶ 60; Cabeza Dec. ¶ 51; Hortis Dec. ¶ 33. Plaintiff admits she spent "hours standing by the front desk" and "a lot of time" in the store. Pl. Dep. 226:5-11.

54. Equinox's policies require trainers to obtain approval from management to work overtime and off-the-clock work is prohibited. Grys Dec. ¶¶ 46, 57 and Exhibits G and H thereto.

55. In addition to the time she claims to be working at Equinox, Plaintiff spent time on multiple hobbies, two hours a day walking her dog, an hour working out, and she also worked at 5 Napkin Grill, Wet Willies, and South Florida Boxing. Pl. Dep. at 20, 22, 44, 156, 159, 173, 220-21, 279, 285, 291 and Exhibit 20 thereto.

56. During her Floor Shifts, Mr. Grys, Ms. Cabeza, and Mr. Hortis often had to instruct Plaintiff to mingle with members, rack weights, and to stop hanging out at the juice bar and chatting with the front desk attendant. Grys Dec. ¶ 60; Cabeza Dec. ¶ 51; Hortis Dec. ¶ 33. Plaintiff admits that her supervisors counseled her on these issues. Pl. Dep. at 71-72.

57. Plaintiff was not directed by management personnel to hang out in the Club at any time; rather she was told to **work out** at the Club. Cabeza Dec. ¶ 49, 55; Hortis Dec. ¶ 35.

58. Plaintiff could not identify anyone who could support her claims of off-the-clock work. Pl. Dep. at 169, 174, 278-79.

**Procedural Prerequisites**

59. Plaintiff filed her underlying discrimination charge with the Equal Employment Opportunity Commission on December 5, 2012 alleging sexual harassment and retaliation. The EEOC dismissed it with a No Cause determination on December 19, 2013.

Dated: September 19, 2014
　　　　Miami, Florida

CASE NO. 9:14-80361-CIV-COHN/SELTZER

    Respectfully submitted,

    JACKSON LEWIS P.C.
    One Biscayne Tower, Suite 3500
    2 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 577-7600
    Facsimile: (305) 373-4466

By: s/ Christine L. Wilson
    Christine L. Wilson, Esq.
    E-mail: *wilsonc@jacksonlewis.com*
    Florida Bar No. 143588
    Anisley Tarragona
    E-mail:*Anisley.Tarragona@jacksonlewis.com*
    Florida Bar No.: 051626

**CERTIFICATE OF SERVICE**

    I HEREBY CERTIFY that a true and correct copy of the foregoing document is being served on September 19, 2014 on all counsel of record on the service list below via transmission of Notices of Electronic Filing generated by CM/ECF.

    Anisley Tarragona
    Anisley Tarragona, Esq.

CASE NO. 9:14-80361-CIV-COHN/SELTZER

## SERVICE LIST

### Karlyle Alvino v. Equinox Holdings Inc.

**CASE NO. 9:14-80361-CIV-COHN/SELTZER**
**United States District Court - Southern District of Florida**

| | |
|---|---|
| G. Ware Cornell, Jr., Esq.<br>Florida Bar No. 203920<br>E-mail: warecornell@gmail.com<br>Cornell & Associates, P.A.<br>2645 Executive Park Drive<br>Weston, Florida  33331<br>Telephone: 954-618-1041<br>Facsimile:  954-524-2706<br><br>**COUNSEL FOR PLAINTIFF**<br>**KARLYLE ALVINO**<br><br><br><br>Served via transmission of Notices of Electronic Filing generated by CM/ECF | Christine Lynne Wilson, Esq.<br>Florida Bar No. 143588<br>E-mail: WilsonC@JacksonLewis.com<br>Anisley Tarragona, Esq.<br>Florida Bar No. 51626<br>E-mail: Anisley.Tarragona@JacksonLewis.com<br>Jackson Lewis P.C.<br>One Biscayne Tower<br>2 S Biscayne Boulevard, Suite 3500<br>Miami, FL 33131-1802<br>Telephone: 305-577-7600<br>Facsimile:  305-373-4466<br><br>**COUNSEL FOR DEFENDANT**<br>**EQUINOX HOLDINGS INC.**<br><br>Served via transmission of Notices of Electronic Filing generated by CM/ECF |